UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                              Case No: 8:19-cr-488-CEH-JSS

JUAN CARLOS ACOSTA HURTADO

**DEFENDANT'S SENTENCING MEMORANDUM**

**COMES NOW THE DEFENDANT, Juan Carlos Acosta Hurtado**, by and

through his undersigned counsel, pursuant to 18 U.S.C. s.3553, and makes this his

sentencing memorandum, and respectfully says:

**USSG CALCULATION**

The BOL is 34. Safety Valve reduces 2 levels to 32. Minor Role reduces 2

levels to 30. Having accepted responsibility (see Stipulation of the Parties

Doc.276) reduces 2 levels to 28. Defendant and Codefendant Quijada Marin went

to bench trial to preserve issues for appeal, lasting only 35 total minutes on 5/7/21

Doc.283. The Government is not moving for the additional level reduction under

s.3E1.1(b), based on the bench trial instead of guilty plea. Without the 3rd level, the

TOL is 28, with no criminal history resulting in a recommended range of 78-97

months (the 10 year min/man is waived based on Safety Valve Qualifications).

Based on the legal policy reasons of s.3E1.1(b) of saving money and time for the

Court and Government, including a **1.** Post-*Miranda* full confession; **2.** avoided a

1

multiple witness, coast guard crew, jury trial; **3.** Stipulation to facts in doc 276; **4.**
bench trial that lasted a mere 35 minutes (minutes doc.283), saving the court and
the government the enormous amount of time and expense of a multiple witness
jury trial, which are the policy bases considerations upon which the government
motion under 3E1.1(b) is based; **5.** equal protection and application of law to
similarly situated codefendants with similar criminal histories, and the other
codefendants received the 3rd level motion by the government, and the only
distinction was a stipulated facts bench trial to preserve legal issues versus a
factual basis change of plea; and **6.** Due Process that applies at sentencing, infra,
and given a whole coast guard crew and others, as well as full time trial Court
Certified Interpreters, did not have to appear for a lengthy trial, the Defendant is
moving for an additional level reduction under 18 USC 3553 factors:

**1. Legal Policy Reasons.** Including having completed with the policy reasons
upon which 3E1.1(b)'s additional level is based, including a full post-*Miranda*
confession, avoiding a whole USCG Crew having to testify in trial, among other
witnesses, needing full time interpreting for any defendant who went to trial,
slowing down the pace of the trial and adding to the court expense of trial, and
avoiding the expending of the Court's and Government's resources and time, by
having a 35 minute, stipulated facts, bench trial instead:

(b) If the defendant qualifies for a decrease under subsection (a), the offense level
determined prior to the operation of subsection (a) is level **16** or greater, and upon

motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by **1** additional level.

and Commentary n.6, in pertinent part:

Subsection (b) provides an additional 1-level decrease for a defendant at offense level 16 or greater prior to operation of subsection (a) who both qualifies for a decrease under subsection (a) and has assisted authorities in the investigation or prosecution of his own misconduct by taking the steps specified in subsection (b). Such a defendant has accepted responsibility in a way that ensures the certainty of his just punishment in a timely manner, thereby appropriately meriting an additional reduction.

**2. Equal Protection and Due Process.** Including being consistent with the 18 USC 3553 factor of similarly situated defendants with similar (no) prior record history, being sentenced similarly, 18 USC 3553 adopting Equal Protection and Application of law principles, U.S.Const.Amend.XIV. and Due Process Tenets. U.S.Const.Amend.V.

Since the Government is not moving for the extra level reduction under 3E1.1(b), the Defendant is moving the Court to grant an extra reduction under 18 USC s.3553 factors. Were the Court to grant this additional level, the TOL would be 27, not 28, resulting in a recommended sentencing range of 70-87 months.

**The Defendant is moving for a 70 months prison sentence, followed by 5 years supervised release, Counts 1 and 2 to be run concurrently, consistent with the similarly situated, similar no prior records, Codefendants in this case**

**whom have received 70 months, infra. Defendant submits that a 70 month
sentence is sufficient, but not greater than necessary, to accomplish the goals
of sentencing, and submits that any more than a 70 month sentence would be
greater than necessary and result in an unreasonable sentence, under 18 USC
s.3553(a), and in a violation of Equal Protection and Application of law, and
Due Process principles.**

**<u>Sufficient but not greater than necessary, 18 USC s.3553(a)</u>**

Of course the Courts ought to impose sentences that "are not greater than
necessary" to comply with the need for the sentence imposed (<u>18 USC s.3553(a)</u>
and <u>(a)(2)</u>).

The Courts when determining the particular sentence to be impose ought to
consider the 7 factors and/or policy statements outlined in <u>18 USC s.3553(a)(1)-
(7)</u>:

**(a) Factors To Be Considered in Imposing a Sentence.—** The court shall impose
a sentence sufficient, but not greater than necessary, to comply with the purposes
set forth in paragraph (2) of this subsection. The court, in determining the
particular sentence to be imposed, shall consider—
**(1)** the nature and circumstances of the offense and the history and characteristics
of the defendant;
**(2)** the need for the sentence imposed—
**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to
provide just punishment for the offense;
**(B)** to afford adequate deterrence to criminal conduct;
**(C)** to protect the public from further crimes of the defendant; and
**(D)** to provide the defendant with needed educational or vocational training,
medical care, or other correctional treatment in the most effective manner;
**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for—
**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
**(i)** issued by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and
**(ii)** that, except as provided in section 3742 (g), are in effect on the date the defendant is sentenced; or
**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994 (a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28);
**(5)** any pertinent policy statement—
**(A)** issued by the Sentencing Commission pursuant to section 994 (a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and
**(B)** that, except as provided in section 3742 (g), is in effect on the date the defendant is sentenced. [1]
**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
**(7)** the need to provide restitution to any victims of the offense.

## REASONS AND MOTIONS TO VARY DOWNWARD

**I. A 70 Month Sentence: 18 USC 3553(a)(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; Equal Protection and Application of Law; Due Process**

The Codefendants in this case have been described as all meriting a minor role,

except the Captain and the head engineer. Because these minor role Codefendants

all qualified for Safety Valve too, they ended up with a TOL of 27 after pleading

guilty, resulting in a sentence of 70 months (low end of the range of 70-87

months). Codefendant Marcano Morales received 60 months, 10 months lower

than the others, but was the first Codefendant to plea guilty.  In order as they

appear in the Indictment, and their sentencing dynamic, are:

1. Asbrubal **Quijada Marin**: Participated in pretrial motions; 5/7/21 went to

Bench Trial with Defendant, lasting a total of 35 minutes Doc.283. Sentencing is

pending;

2. Defendant, Juan Carlos **Acosta Hurtado**: Participated in pretrial motions;

Stipulated to facts Doc.276, went to Bench Trial with Codefendant Quijada Marin

on 5/7/21 which lasted a total of 35 minutes Doc.283;

3.  Rafael Antonio **Querales Grafe**: Participated in pretrial motions; 4/27/21

change of plea without a plea agreement to Counts 1 and 2, with notice of elements

filed and a (Doc.224 factual stipulation) (Doc.272 COP hearing); sentenced to **70**

**months FBP**, followed by 5 years sup. rel, concurrently to Counts 1 and 2. He was

Cr.Hx.I, safety valve, minor role, TOL 27 (70-87 months range) (Doc.328

sentencing)

4. Edwin Ramon **Marcano Morales**: Participated in pretrial motions; 12/21/20

pled guilty to Count 1 only, pursuant to a (Doc.190 plea agreement), the

Government motion for 2 levels reduction (Doc.232) was granted at (Doc.243

sentencing), resulting in **64 months FBP**, followed by 5 years sup. rel. Defendant

with a minor role, safety valve, Cr.Hx.I, had a TOL 27 (70-87 months range);

5.  Juan Carlos **Diaz Morales**: Participated in pretrial motions; 4/1/21 pled guilty

to Counts 1 and 2, without a plea agreement, a notice of elements having been filed

by the Government (Doc.253 sentencing), resulting in a 7/1/21 sentence of **70**

**months FBP**, followed by 5 years sup. rel. His TOL was 27, Cr.Hx.I, minor role

and safety valve; (70-87 months range);

6. Henry Jose **Marquez**: Participated in pretrial motions; 4/27/21 pled guilty

without a plea agreement to Counts 1 and 2, with notice of elements filed and a

(Doc.224 factual stipulation) (Doc.272 COP hearing); **Sentencing** is scheduled for

**8/11/21** at 11:00 a.m. Doc.327.

7. Jose Rafael **Perez Colina**: Participated in pretrial motions; On 3/3/21 he pled

guilty to Count 1 only pursuant to a Plea Agreement (Doc.211) (Doc.217 plea

hearing); On 6/4/21 he was sentenced to **70 months FBP** followed by 5 years sup.

rel; he had a Cr.Hx.I, was minor role and safety valve, TOL 27 (70-87 months)

(Doc.304 sentencing).

   As stated above, the Defendant would be at a TOL of 27, also, like the

Codefendants who were similarly situated as he is: Cr.Hx.I, Minor Role, Safety

Valve, Accepting Responsibility (Factual Stipulation at Doc.276), except the

Government is not moving for the third level reduction under s.3E1.1(b) based on

his having gone to Bench Trial instead of pleading guilty, resulting in a TOL of 28

(78-97 months), instead of a TOL of 27 (70-87 months).

   The Defendant moves for a 70 month FBP sentence, followed by 5 years

supervised release, counts 1 and 2 to run concurrently, to be consistent with 18

USC 3553(a)(6), and  "the need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct".

18 USC 3553(a)(6):

*(a) Factors To Be Considered in Imposing a Sentence.— The court shall impose
a sentence sufficient, but not greater than necessary, to comply with the purposes
set forth in paragraph (2) of this subsection. The court, in determining the
particular sentence to be imposed, shall consider—*

*(6) the need to avoid unwarranted sentence disparities among defendants with
similar records who have been found guilty of similar conduct; and*

**USSG s.5K2.0 s.20**

"After Booker [fn1], the courts must consider the factors in 18 U.S.C. s.3553(a)

including subsection (6)…" *Federal Sentencing Guidelines Handbook, Text and*

*Analysis, 2014-2015 Edition*, Roger W. Haines, Jr, Frank O. Bowman, III, and

Jennifer C. Woll, Thomson Reuters, ("*Handbook*"), s.5K2.0, Grounds for

Departure, Generally, at p.1689.

"Section 3553(a)(6) requires the judge to 'avoid unwarranted sentence disparities
among defendants with similar records who have been found guilty of similar
conduct.' 'Disparity gets its content from the purposes of sentencing.  Unwarranted
disparity is different treatment of offenders who are similar in ways that are
relevant to the purposes of sentencing, or uniform treatment of offenders who
differ in ways that are relevant to the purposes of sentencing [fn69].'" *Defending a*

*Federal Criminal Case*, 2010 Edition, Volume II, Federal Defenders of San Diego, Inc, at 17-813 ("*Federal Defender*"), citing and quoting Fifteen Year Review at 113; Paul J. Hofer, *Immediate and Long-Term Effects of United States v. Booker*, 38 Ariz.ST.L.J. 425, 442 (2006).

"Defendants with similar records convicted of similar conduct vary widely in their culpability, risk of recidivism, dangerousness, and rehabilitation needs.  Judges must now take account of these variations, and uniformity for its own sake is no longer the goal of the sentencing system.  *See Kimbrough*, 128 S.Ct. at 574 ("some departures from uniformity were a necessary cost of the remedy we adopted").  Judges must now consider the need to avoid unwarranted similarities among the defendants who are not similarly situated, as well as unwarranted disparities among defendants who are similarly situated.  *See Gall*, 128 S.Ct. at 600 (approving of the judge's 'consider[ation of] the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated" (emphasis in original).  And the judge must consider "any unwarranted disparity created by the [guideline] itself."  *Kimbrough*, 128 S.Ct. at 574; *see also id.* at 575 (approving judge's consideration of the fact that the guideline 'itself created an unwarranted disparity within the meaning of s.3553(a)')."  *Federal Defender*" at 17-813, citing and quoting *Kimbrough v. U.S*, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed. 2d 481, 2007 U.S. LEXIS 13082 (2007); and *Gall v. U.S*, Citations: 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed. 2d 445, 2007 U.S. LEXIS 13083 (2007).

The need to avoid an unjustified disparity in sentencing among similarly situated defendants with similar criminal records, is also consistent with principles of Equal Protection and Application of Law U.S.Const.Amend.XIV, and Due Process, U.S.Amend.V. (Due Process applies at Sentencing *U.S. v. Beaulieu*, 900 F.2d 1537, 1540 (10th Cir. 1990)).

## II. Personal Factors, 18 USC s.3553

Defendant is 36 (8/6/84). His father is a skilled laborer and his homemaker mother passed in 2013 of a heart attack at age 47. His parents separated in 1985, the year after Defendant was born. Defendant is close to his family and has three siblings:

full brother (age 38) who works in transportation, and two half maternal siblings: a 35 year old homemaker and a 32 year old mariner brother. Although the Defendant is from a modest economic background, he had a pleasant upbringing, enjoying playing soccer.  Defendant, as a single parent, has raised and supported a son who recently graduated high school and turned 18, who has lived with Defendant all his life, and whom lives with the Defendant and Defendant's father, in Defendant's father's three bedroom, two bathroom home.

The Defendant is a mariner and fisherman since 2010. He works on large vessels that transport cargo (fruit, plants, etc.). He makes about $100.00 per week. He has no significant assets.

He has no prior record, and has not suffered from mental illness or substance abuse.

The Defendant completed 12th grade and then went to university for 4 years, studying mechanical fabrication. All he has to do is complete his thesis to get his university bachelor's degree diploma (he left college when his mother passed). In prison, he would like to learn English, receive vocational training, and most importantly, he would like to make money working to help support his family back home in Venezuela.

## III. Personal Cost to Defendant and his family; Cost to Society of Lengthy Incarceration

**It costs $39,365.00 per year to incarcerate offenders, as opposed to $4,465.00 to supervise offenders in the community**

Defendants ought to be sentenced to enough incarceration to satisfy "sufficient[ly]" the goals of punishment in sentencing factors and commission policy, while avoiding any "greater than necessary" expense and punishing sentence. A sentence which exceeds one that is sufficient, will be "unreasonable" and "unfair". *U.S. v. Fernandez*, 436 F.Supp. 2d 983 (E.D. Wis. 2006) (According to the *Federal Defender*, infra, the Court in *U.S. v. Fernandez*, 436 F.Supp. 2d 983 (E.D. Wis. 2006) imposed a 126 months sentence because the career offender guideline range of 188-235 months, was greater than necessary to satisfy sentencing purposes, in part due to Sentencing Commission study on unfairness of career offender designation, *Federal Defender*, at p.17-847.

**The Personal and Economic Cost of Incarceration: a reason to Adjust Downward**

The *Federal Defender* lists the following cases with the following tenets:

"*United States v. Chavez*, 230 F.3d 1089 (8th Cir. 2000) (Bright, J., concurring) (sentence will probably cost taxpayers $836,000, and the defendant his life. Guidelines range for nonviolent offenders drains billions from taxpayers and keeps potentially productive members of society locked up, causing staggering "opportunity costs").

*United States v. Angelos*, 345 F. Supp. 2d 1227 (D. Utah 20040 (cost of mandatory 61-year-sentence runs to $1,265,000, money that could otherwise be spent on other law enforcement or social programs to reduce crime).

11

*United States v. Hughes*, 825 F. Supp. 866 (D. Minn. 1993) (court noting that "the non-rehabilitation purposes of incarceration – retribution, deterrence and incapacitation – would all be more than adequately served by a far shorter sentence. Both society and the defendant will pay a dear cost for this sentence and receive very little in return."). *Federal Defender* at pp. 17-866-867.

IV. **Prison has greater significance/impact for this first time offender**

S.3553(a)(2)(A) states in part, a sentence is meant "*to provide just punishment for the offense*" while s.3553(a)(2)(B) **states one reason upon which to fashion a sentence, is "***to afford adequate deterrence to criminal conduct*". The Defendant is 32 years old without any prior record, supra.

The *Federal Defender* at s.17.05.15 states:

*United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming variance of 78 months from 108 months for defendant convicted of distributing child pornography, justified in part by judge's finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with goal of "just punishment" in s. 3553(a)(2)(A) and "adequate deterrence" in Section 3553(a)(2)(B)).

*United States v. Paul*, 239 F. Appx 353 (9th Cir. 2007) (defendant's 16-month sentence, the top end of the guideline range for unlawful receipt of federal funding, was unreasonably high because defendant was a first-time offender, returned the funds, and displayed remorse).

*United States v. Weidner*, 209 F. Appx 826 (10th Cir. 2006) (affirming variance from advisory range of 78-97 months to 60 month sentence for two counts of false bank entry considering defendant's loss of law license due to conviction and judgment that this sentence provided adequate deterrence).

*United States v. Jewell*, 2009 WL 1010877 (E.D. Ark. April 15, 2009) (defendant sentenced to 30 months in prison for aiding and abetting tax evasion, because guideline range near the statutory maximum of 5 years was inappropriate for first time offender).

*United States v. Cull*, 446 F. Supp. 2d 961 (E.D. Wis. 2006) (non-guideline sentence of 2 months in jail and 4 months home confinement, where advisory range was 10-14 months for marijuana offense by defendant who had never been confined, was sufficient to impress on him the seriousness of his crime and deter him from reoffending).

*United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally, a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration).

**V. Harsh Effect on Innocent family members**

The Defendant has been the only parent in his son's life, the mother's whereabouts are unknown. The Defendant has raised him spiritually and economically, and they live with as a family of 3 with Defendant's father in Defendant's father's house. The Defendant's young adult son, just having turned 18, just having graduated high school, needs his father in his life, as the only parent that has always been there for him, as a loving, supportive, parental and father. Defendant's father, in the grandparent generation now, also needs the help of Defendant's economic support for the household income needs, and with raising his 18 year old grandson, the Defendant's son. The harsh effect incarceration can have on innocent family members is a factor courts can consider under s.3553(a), *Federal Defender* at p.17-864, section 17.05.18.01, citing to various cases, including *U.S. v. Antonakopoulos*, 399 F.3d 68 (1st Cir. 2005); *U.S. v. Taylor*, 280 Fed. App'x 397 (5th Cir. 2008); *U.S. v. Dominguez*, 296 F.3d 192 (3d Cir. 2002); *U.S. v. Prisel*, 316 Fed. App'x 377 (6th Cir. 2008); *U.S. v. Owens*, 145 F.3d 923 (7th

13

Cir. 1998); *U.S. v. Lehmann*, 513 F.3d 805 (8th Cir. Jan. 17, 2008); *U.S. v.*

*Menyweather*, 431 F.3d 692 (9th Cir. 2005); *U.S. v. Leon*, 341 F.3d 928 (9th Cir.

2003); *U.S. v. Aguirre*, 214 F.3d 1122 (9th Cir. 2000); *U.S. v. Garcia-Salas*, 260

Fed. App'x 27 (10th Cir. 2007); *U.S. v. Gauvin*, 173 F.3d 798 (10th Cir. 1999); *U.S.*

*v. Davis*, 2008 WL 2329290 (S.D.N.Y. June 5, 2008); *U.S. v. Crawford*, 2007 WL

2436746 (E.D. Wis. Aug. 22, 2007); *U.S. v. Boeka*, 2006 WL 3789499 (D. Neb.

Dec. 20, 2006); *U.S. v. Bortnick*, 2006 WL 680544 (E.D. Pa. March 15, 2006);

*U.S. v. Bailey*, 369 F. Supp. 2d 1090 (D. Neb. 2005);  *U.S. v. Manasrah*, 347 F.

Supp. 2d 634 (E.D. Wis. 2004); *U.S. v. Mateo*, 299 F. Supp. 2d 201 (S.D.N.Y.

2004); *U.S. v. Colp*, 249 F.Supp. 2d 740 (E.D. Va. 2003); *U.S. v. Lopez*, 28 F.

Supp. 2d 953 (E.D. Pa. 1998).

## VI. <u>after a significant sentence term in prison, at some point, studies say, longer sentences lose any more efficacy at deterence</u>

**To afford adequate deterrence to criminal conduct.**

The Defendant will be deported upon completing the incarcerative portion of

his sentence, given he was brought to the U.S. solely for this prosecution. Research

has consistently shown that while the certainty of being caught and punished has a

deterrent effect, "increases in severity of punishments do not yield significant (if

any) marginal deterrent effects." Michael Tonry, Purposes and Functions of

Sentencing, 34 Crime & Just. 1, 28 (2006) "Three National Academy of Science

panels… reached that conclusion, as has every major survey of evidence." Id.;

*Please see also* <u>Zvi D. Gabbay, Exploring the Limits of the Rerstrative Justice Paradigm: Restorative Justice and Sentence Severity: An Analysis of Recent Research (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF</u>. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countries. Id. at 1. It examined the effects of changes to both the certainty and severity of punishment. Id. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates…were not sufficient to achieve statistical significance." Id. at 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." Id. at 1.

**Wherefore, the Defendant, Juan Carlos Acosta Hurtado,** by and through his undersigned counsel, prays this Honorable Court enter its order granting his motion for one level downward variance, and in any event, sentencing him to no more than 70 months prison, followed by 5 years supervised release.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished to the U.S.

Attorney's Office, and all electronically connected parties, Via Electronic Filing,

on Friday 7/30/21.

## CERTIFICATE OF TYPE AND FONT
## COMPLIANCE WITH LOCAL RULES

This memorandum is typed in double spaced, with 14 point Times New Roman

font; indented quotations are single spaced and at least 13 point font; footnotes are

single spaced and 12 point font; has 1.00 inch margins; page numbers bottom

center. **Effective 2/1/21 New Local Rules 1.08** (governing the form of a pleading,

motion, or other paper) and it is 16 (no more than 25) pages long **Rule 3.01 -**

**Motions and Other Legal Memorandums.**

**Respectfully submitted,**

*/s/ Jorge León Chalela*
**JORGE LEÓN CHALELA, Esq.**
**Jorge León Chalela, P.A.**
P.O. Box 173407, Tampa, Florida 33672
Office: (813) 221-5600; Personal Cell: (727) 415-4286
E-Mail: chalelalaw@yahoo.com; FBN: 73245
(CJA) Attorney for Defendant, Juan Carlos Acosta Hurtado